UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK RUSSELL | CIVIL ACTION |
| VERSUS | NO. 10-1772-DEK |
| MARLIN GUSMAN, ET AL. | |

## ORDER AND REASONS

Plaintiff, Patrick Russell, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. He named as defendants Orleans Parish Sheriff Marlin Gusman, Dr. Ham, Dr. Gore, and Dr. Dileo. In this lawsuit, plaintiff claimed that he received inadequate medical care for back pain resulting from an injury in a vehicular accident. Specifically, he stated his claim as follows:

> On 12/30/2009 while traveling to court in the custody of Orleans Parish Deputies the van we were traveling in was ran into by a Orleans Parish Prison forklift #SD25. The forklift ran into the side of the van lifting the van nearly 4 ft. I was seated and handcuffed nearest the van door and received a great impact from collision. Consequently, I also received the blunt force to my back and neck. It was a lumbar sprain/strain. The injured ask to go to see a doctor we were told we were fine.[1]

---

[1] Rec. Doc. 6, p. 3.

Defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[2] Plaintiff has not filed an opposition to that motion. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[3]

## I.  Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to

---

[2]   Rec. Doc. 18.

[3]   Rec. Doc. 17.

summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II. Analysis

Before analyzing the particulars of plaintiff's claims, the Court initially notes what the federal constitution does *not* require with respect to the medical care of inmates.

First, the federal constitution does not require that inmates receive optimal care. The fact that an inmate's medical treatment "may not have been the best money could buy" is simply insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).

Second, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

On the contrary, an inmate's federal constitutional right to medical care is extremely limited. Specifically, the federal constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, are violated only if his serious medical needs are met with *deliberate indifference* on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). On that point, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In their motion, defendants argue that plaintiff's medical records disprove any allegation of deliberate indifference. Those records do in fact reflect that plaintiff received repeated medical care for his back pain. For example, the following is a sampling of the medical care he received prior to filing this lawsuit:

- On December 30, 2009, the date of the accident, plaintiff was examined by a jail nurse. The nurse noted that plaintiff was in no apparent distress, had

> ambulated to the medical department with a steady gait, was able to raise his hand, and exhibited no facial grimacing. However, he was referred to a physician for sick call.[4]

- On January 6, 2010, plaintiff submitted a sick call request, stating: "This is my Fifth time ASKING Orleans Parish Criminal Sheriff's Office to send me/Patrick Russell to see a Doctor at a Hospital for the Injury's happened from your Forklift 'Hitting' the VAN I, Patrick Russell was in. Yes I'm in a lot of PAIN." Medical personnel noted that a sick call for this complaint was already scheduled for January 21, 2010.[5] Plaintiff also submitted nearly identical sick call requests on January 8 and 19, 2010.[6]

- On January 21, 2010, plaintiff was examined by a jail nurse practitioner. For his various medical complaints, he was prescribed an array of medications, including the pain medications Flexeril and Naproxen.[7]

- On March 11, 2010, plaintiff was examined by a jail nurse practitioner. Along with various other medical complaints, he reported that the Flexeril and Naproxen he was receiving for back pain did not help. Therefore, those

---

[4] Rec. Doc. 18-3, p. 53.

[5] Rec. Doc. 18-3, p. 22.

[6] Rec. Doc. 18-3, pp. 20-21.

[7] Rec. Doc. 18-3, pp. 46-47.

medications were discontinued, and he was prescribed alternative pain medications, i.e. Neurontin and Indocin.[8]

Moreover, the records reflect that plaintiff continued to receive such care after this federal action was filed. For example, the records document the following care:

- On June 2, 2010, plaintiff submitted a sick call request stating: "I will like to see a Doctor about them taking me off of my Neurontin + Indocin? And also I will like to see a Medical Director." He was examined by a jail nurse on June 3, 2010, who noted that plaintiff was observed bending to talk through the pass slot on the tier without any apparent discomfort, that he was ambulating without difficulty, that there were no deformities to his back noted, and that he was not in any apparent distress. However, plaintiff was referred to the jail physician for a sick call.[9]

- On June 26, 2010, plaintiff submitted a sick call request stating: "I need some PAIN pills for my back." He was examined by a jail nurse on June 28, 2010, who referred him to the jail physician for a sick call.[10]

---

[8] Rec. Doc. 18-3, p. 45.

[9] Rec. Doc. 18-3, p. 19. The records reflect that plaintiff's prescriptions for Neurontin and Indocin were discontinued on May 24, 2010. Rec. Doc. 18-3, p. 73. The jail records appear to suggest that action was taken as a result of plaintiff allegedly being observed throwing away his medications. See Rec. Doc. 18-4, pp. 75, 79, and 113. However, the records reflect that at various subsequent times he continued to receive those medications. See, e.g., Rec. Docs. 18-3, pp. 54, 58, 62, and 66.

[10] Rec. Doc. 18-3, p. 18.

- On September 9, 2010, plaintiff submitted a sick call request stating: "I need to go to a <u>Hospital</u> Bad, my bac[k] is kill me. I do not need to see a doctor here." The following day, a jail nurse examined plaintiff and found that he was in no apparent distress, ambulated without assistance, had a strong and steady gait, and had a full range of motion of all extremities. She noted that plaintiff already had a sick call with the jail physician pending.[11]

- On November 4, 2010, plaintiff was examined by a jail nurse practitioner. He complained of back pain resulting from a fall. During the examination, the nurse noted: no grimacing; no guarding; no apparent distress; no difficulty ambulating; no back deformity, swelling or redness; no pain on palpitation; strength to lower extremities was intact. She concluded: "Clinical assessment does not correlate [with] complaint of pain."[12]

- On February 25, 2011, plaintiff was examined by a jail nurse practitioner. He was prescribed additional ibuprofen for pain.[13]

Clearly, the medical records in the instant case show that plaintiff was not refused treatment, his medical complaints were not ignored, and he was not intentionally treated incorrectly. Those records instead reflect that he was repeatedly seen by the jail's medical staff and treated with medications. Accordingly, the records disprove his allegation that his medical needs were met with

---

[11] Rec. Doc. 18-3, p. 17.

[12] Rec. Doc. 18-3, p. 30.

[13] Rec. Doc. 18-3, p. 24.

deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").[14]

Moreover, the fact that plaintiff's back pain was not ultimately resolved by that medical treatment does not prove otherwise. Federal constitutional protections are not violated simply because an inmate's medical treatment was unsuccessful or because pain persisted despite treatment. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). The United States Fifth Circuit Court of Appeals has expressly noted: "Continuing back pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

This Court notes that plaintiff disagreed in particular with the decision to treat him at the jail's medical department rather than to send him to the hospital. However, that disagreement does not make his claim actionable. As the United States Fifth Circuit Court of Appeals has held: "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, *nor does a prisoner's disagreement with his medical treatment, absent*

---

[14] Because plaintiff cannot prove deliberate indifference in this case, the Court need not determine whether his back pain actually constituted a *serious* medical need as required to support a federal constitutional claim. However, the Court notes that it is at least debatable whether such back pain qualifies as a sufficiently serious medical need to trigger constitutional protections. See, e.g., Claudet v. Jones, Civ. Action No. 10-87, 2010 WL 4365512, at *4 (E.D. La. Oct. 27, 2010).

*exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.*" Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (footnote and quotation marks omitted; emphasis added). Simply put, a decision as to whether an inmate should be treated in the jail medical department rather than by outside medical providers is a matter of professional medical judgment. See Alfred v. Texas Department of Criminal Justice, 80 Fed. App'x 926, 927-28 (5th Cir. 2003); see also Fowler v. Hodge, 94 Fed. App'x 710, 713 (10th Cir. 2004).

Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). Based on the evidence showing that plaintiff received continued medical care, as well as on the complete absence of contrary evidence, there is no basis whatsoever to engage in such second-guessing in the instant case.

In summary, plaintiff cannot meet his burden of proof to establish that his medical needs were met with deliberate indifference. Therefore, defendants are entitled to judgment as a matter of law.[15]

Accordingly,

**IT IS ORDERED** that the unopposed motion for summary judgment is **GRANTED** and that plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this sixteenth day of June, 2011.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[15] Because the Court finds that there was no deliberate indifference in this case, it is unnecessary to consider the alternative grounds argued in defendants' motion.